675 So.2d 1164 (1996)
COMMUNICATION AND INFORMATION RESOURCES, INC.
v.
EXPRESSIONS ACQUISITION CORPORATION.
No. 95-CA-1070.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1996.
L. Kevin Coleman, New Orleans, William C. Credo, III, Metairie, for Appellant Communication and Information Resources, Inc.
Brent B. Barriere, Robert S. Eitel, Gerardo R. Barrios, Phelps Dunbar, New Orleans, for Appellee/Defendant Kenneth J. Kwit.
William W. Hall, William W. Hall & Associates, Metairie, for Appellees/Defendants Charles E. Garvin and Greg A. Rosenbaum.
Before GOTHARD and CANNELLA, JJ., and CUSIMANO, J. Pro Tem.
CANNELLA, Judge.
Plaintiff, Communication and Information Resources, Inc. (CIRCA), appeals from a summary judgment that dismisses defendants, Kenneth Kwit, Charles Garvin and Greg Rosenbaum, in a suit for breach of contract. We reverse and remand.
In 1992, Eric Aschaffenburg, the owner of a custom furniture manufacturing business (Expressions Custom Furniture), began to investigate obtaining a computer system to connect his manufacturing plant in Tupelo, Mississippi to his numerous franchisees in order to provide them with swift access to information about the products supplied by the factory. Nancy Mathis, the daughter of one of his long-time employees worked for CIRCA and had based her college computer thesis on Aschaffenburg's company. Because of this relationship, Aschaffenburg offered CIRCA, through its President, James Morris, the opportunity to develop the computer system. On April 3, 1992, Aschaffenburg and Morris signed a letter "agreement", provided by Morris, which set out various terms for the development of the "Custom Furniture Accounting System." A few handwritten changes were made by Aschaffenburg and initialed by him.
Shortly after this document was signed, Aschaffenburg sold the business to a new group of investors. The business collectively hereinafter referred to as Expressions is comprised of five separate companies, Expressions (Delaware), Inc., Expressions in Fabrics, Ltd., Westwood Industries, Inc. *1165 (hereinafter referred to as Westwood) (the manufacturing plant), Expressions Custom Furniture, Ltd. (erroneously cited as Expressions Custom Furniture, Inc.) and The Ad Home Agency, Inc. The new investors were Heller Equity Capital (hereinafter referred to as Heller)60%, a partnership of Charles Garvin and Palisades Associates, Inc. (owned by Mr. and Mrs. Rosenbaum)10% and Kenneth Kwit30%. Heller was represented on the Board of Directors of each of the individual companies by Ned Jessen and Brian Boorstein. Rosenbaum, Garvin and Kwit were the other three members of the five member Board of Directors of all of the companies, except Westwood. Kwit and Rosenbaum comprised the Board of Directors of Westwood. For all of the companies, Kwit was the Chairman of the Board and Chief Executive Officer and Rosenbaum was the secretary. The other officers were not named in the suit. Garvin, because of his prior retail and computer expertise, was not an officer, but was a member of the Board of Directors and acted as a consultant in the matter of the development of the computer program.
A few months after the sale, in July 1992, Garvin began to express his doubts that CIRCA could timely, and even eventually, develop the computer system. He also expressed concern that the cost of the system was too high. In addition, Garvin and Kwit refused to acknowledge the letter "agreement" as a binding contract, although Morris continued to assert that it was the contract for the development of the program. Because the new owners were not happy with the arrangement that was made between Aschaffenburg and CIRCA, Garvin, Kwit and Morris corresponded, discussed the system and tried to work out Garvin's and Kwit's concerns. When it was apparent that the parties would not come to a satisfactory arrangement, Morris declared that CIRCA would perform solely according to the written letter "agreement" and that there would not be any changes to that agreement. Garvin advised the Board of Directors to terminate the relationship. Subsequently, the Board of Directors voted to do so.
CIRCA filed suit against Expressions on September 24, 1992. Defendant filed a reconventional demand. Subsequently, several Motions for Summary Judgment were filed, and all were denied. On March 15, 1994, CIRCA filed a third amended petition, adding Kwit, Garvin and Rosenbaum as defendants. CIRCA alleged that they intentionally, and without justification, interfered with the contract between Expressions and CIRCA. Various other pleadings were filed and an application for supervisory writs was applied for and denied. On August 16, 1995, all of the defendants filed a joint Motion For Summary Judgment, contending that the letter was not a valid contract, that the Directors were within the scope of their authority and were justified in voting to terminate CIRCA's "ineffectual effort" to develop the program, that they did not act for personal gain and that the actions of the Directors did not violate the "business judgment rule." On September 7, 1995, the trial judge denied the motion. Defendants filed a Motion to Reconsider and on November 9, 1995, the trial judge granted the motion for summary judgment as to Garvin, Kwit and Rosenbaum, but denied it as to the companies.
On appeal, CIRCA contends that the trial judge erred in granting the motion for summary judgment and in dismissing Garvin, Kwit and Rosenbaum.
CIRCA contends that there are numerous issues of contested fact precluding a summary judgment. It contends that it pled and proved a prima facie cause of action against appellees for intentionally inducing Expressions to breach its contract with CIRCA. CIRCA cites 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989) and its progeny and refers generally to the numerous documents contained in the record.
Appellees assert that summary judgment was appropriate because CIRCA produced only allegations, but no evidence, that it satisfied the Spurney criteria for intentional interference with contract. Further, they contend that, even presuming that a contract existed, which appellees deny, and presuming that appellees induced Expressions to breach it, they can not be liable under Spurney because they acted within the scope of their *1166 authority and with justification. In addition, appellees assert that Garvin is not a corporate officer and that his actions do not fall under the Spurney exception to the long-standing immunity from suit for interference with contract.
In Spurney, 538 So.2d at 231, 232, the Louisiana Supreme Court stated:
Referring to these basic principles, we conclude that, in the light of modern empirical considerations and the objectives of delictual law, an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.
Thus, an officer is privileged to induce the corporation to violate a contractual relation, or make its performance more burdensome, provided that the officer does not exceed the scope of his authority or knowingly commit acts that are adverse to the interests of his corporation. Where officers knowingly and intentionally act against the best interest of the corporation or outside the scope of their authority, they can be held liable by the party whose contract right has been damaged ...
Since officers owe fiduciary obligations to the corporation and its shareholders and hold policy making positions, their fidelity and freedom of action aimed toward corporate benefit should not be curtailed by undue fear of personal liability ... However, the officer's privilege should not be absolute, it should be limited by the purpose for which it is granted, i.e., to allow him to fully perform his fiduciary duty as authorized by his corporation. When the officer's action is detrimental to the corporation or outside the scope of his authority, the officer should be responsible for his intentional acts of interference with the contract rights of another ... (Citations omitted.)
At page 234, the court concluded:
For purposes of analysis, the action against a corporate officer for intentional and unjustified interference with contractual relations may be divided into separate elements: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.
Numerous documents were contained in the record attached to the various pleadings. These consisted of the letter "agreement" between Aschaffenburg and CIRCA, a chart showing the Officers and Board of Director members of the five companies, approximately 23 memorandums between Garvin, Morris and Kwit from July 1992 through September 1992, an affidavit by Kwit, deposition excerpts of Kwit, Garvin, Aschaffenburg, Mathis, Morris, and Floyd Yaeger, a consultant for CIRCA, a promissory note and two agreements to invest in CIRCA by Harris Segal and Louisiana Computer Corporation, interrogatories and answers. According to these various documents, Morris, Mathis and Yaeger believed that the letter agreement was a binding contract, although Garvin, Kwit and Aschaffenburg contended that the letter "agreement" was a letter of intent or beginning point in the relationship. Aschaffenburg asserted in his deposition that he thought the letter "agreement" was not a binding contract because the parties had to work out what was needed by Expressions, what prices would be acceptable to the franchisees and who would be the primary purchasers of the final computer program. The question of whether this was a contract has not yet been ruled on by the trial judge. However, we can decide our issue without *1167 this ruling. Presuming that a contract was confected, our issue is whether there is a material issue of disputed fact precluding summary judgment relative to the Spurney criteria.
The evidence shows that Garvin advised Kwit, and eventually the other Board of Director members, that Expressions should terminate the relationship with CIRCA. Over the course of his investigation of CIRCA's proposed program, Garvin became uncertain that CIRCA could perform and perform timely. In addition, he was concerned about the $15,000 maximum price for the franchisees to purchase the program when it was completed. He stated, in an internal memorandum, that Expressions was getting "ripped off." When presented to the franchisees, at least two complained about the potential $15,000 price, even though that figure was a maximum. At no time did Garvin or Kwit acknowledge that the letter "agreement" was a contract and thus, they were in constant negotiations with Morris about changing its terms.
CIRCA argues that the reason appellees took that approach was that they wanted Morris to agree to let Expressions own the developed program, solely for the personal gain of appellees. It contends that appellees were not happy with the contract because CIRCA was going to prosper on future sales of the program and they wanted to reap the profits from selling the completed program. CIRCA argues that Expressions is not a computer company, but a furniture company, implying that these actions were not taken in consideration of Expressions' best interest. Further, CIRCA asserts that Garvin knew that it had the technical expertise to develop the program, that it could perform timely and that it was financially sound (even though it went outside of the company for investment money in the development of the program). Notably, Yaeger testified to these conclusions in his deposition, as well.
In Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750-52, the Louisiana Supreme Court analyzed the application of summary judgments as follows:
Summary judgments are reviewed on appeal de novo ... An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law ...
A "genuine issue" is a "triable issue." More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes" ... In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence ... "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact ..."
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery ... "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute..." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits ...
Because the summary judgment device deprives a party of a trial on the merits, Louisiana courts "cautiously and sparingly" employ it ... Indeed, as we recently recognized, in Louisiana "there is a strong preference for full trial on the merits in non-defamation cases."

Summary judgment is seldom appropriate for determinations based on subjective facts, such as motive, intent, good faith, knowledge and malice. As we put it in Penalber, summary judgment "is rarely appropriate for a determination based on subjective facts ..." Nonetheless, Louisiana courts have recognized that, while "rare", summary judgment may be granted. *1168 on subjective intent issues when no issue of material fact exists concerning the pertinent intent ...
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues ... "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact ..." In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated ... Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party ...

If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain ... LSA-C.C.P. Art. 967 outlines the non-moving party's burden of production as follows:
When a motion for summary judgment is made and supported ... an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
As this court has oft-stated, summary judgment may be granted when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court ... Likewise, summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. (Citations omitted; emphasis added.)
As stated in Smith, summary judgment is rarely appropriate when subjective facts are at issue. Here, appellees' justification is, to some extent, a subjective matter, which is not clearly determinable by the evidence presented. Furthermore, the testimony of Yaeger puts at issue the justification for terminating the letter "agreement" because he testified that Aschaffenburg consulted with his computer consultant prior to confecting the agreement, that CIRCA was financially sound and that it could have developed the program timely. In addition, the evidence shows that appellees were interested in obtaining the sole ownership of the program in order to reap the profits that would go to CIRCA under the letter "agreement". There was no evidence whether this would have been in the best interest of Expressions. Neither was there any evidence whether the program being developed by CIRCA was too expensive or would not work for the purposes of Expressions. Consequently, we find that material issues of disputed facts exist as to whether appellees' actions were justified and whether they were detrimental to Expressions. See: Spurney, 538 So.2d at 232.
The final question is whether Garvin is subject to liability under Spurney. In Yoes v. Shell Oil Co., 95-12 (La.App. 5th Cir. 5/10/95), 657 So.2d 241, 251 we stated that:
In Spurney, the court recognized only a limited application of tortious interference with contract. The Spurney decision is limited to the "corporate officer's duty to refrain from intentional and unjustified interference with the contractual relations between his employer and a third person." Id. We have found no cases in this state that have expanded the application of the Spurney case beyond the elements set out there.
In the Yoes case, the issue was whether Yoes had a cause of action against Shell Oil for its intentional interference with a contract between Yoes and Chaisson. That situation is distinguishable from the facts here. Although the Spurney case involved a corporate officer and the court specifically referred to "corporate officer", the court made it clear that the basis of the liability was the *1169 fiduciary duty owed by the corporate officer to the corporation. Although Garvin is not a "corporate officer", he is a member of the Board of Directors for all of the Expressions companies and thus owes them a fiduciary duty. Therefore, we conclude that Garvin is within the ambit of Spurney and can be held liable for intentional interference with contract.
Accordingly, the judgment of the trial court is hereby reversed and the case remanded for further proceedings.
Appellees are to pay costs of this appeal.
REVERSED AND REMANDED.