807 So.2d 895 (2002)
Daniel J. BOUTTE and his Wife Sandra Boutte, Individually and on Behalf of their Minor Child, Sandi Boutte, and his Sons, Daniel J. Boutte, Jr., and Ernest Mamolo, III
v.
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 1, d/b/a West Jefferson General Hospital, Charity Hospital in New Orleans, Jefferson Parish Hospital Service District No. 2, d/b/a East Jefferson General Hospital, Hotel Dieu Hospital and Daughters of Charity of St. Vincent De Paul, Inc., St. Louis, U.S.A.
No. 01-CA-918.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
*896 C.A. Fleming, III, Fleming & Rosamond, Metairie, LA, Attorney for Plaintiffs/Appellants.
Richard P. Ieyoub, Attorney General, Jude D. Bourque, Assistant Attorney General, Louisiana Department of Justice, Litigation Division, Baton Rouge, LA, Attorneys for Defendant/Appellee (Medical Center of Louisiana at New Orleans, formerly known as Charity Hospital In New Orleans).
Fredrick W. Bradley, Oreck, Bradley, Crighton, Adams & Chase, New Orleans, LA, Attorney for Defendant/Appellee (Hotel Dieu Hospital).
Antonio E. Papale, Jr., Robert D. Ford, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, Attorneys for Defendants/Appellees (Jefferson Parish Hospital Service District No. 1 d/b/a West Jefferson General Hospital and Fireman's Fund Insurance Company).
Peter J. Butler, Peter J. Butler, Jr., Richard G. Passler, Michael C. Luquet, Breazeale, Sachse & Wilson, New Orleans, *897 LA, Attorneys for Defendants/Appellees (Hospital Service District No. 1 of Jefferson Parish d/b/a West Jefferson Medical Center).
Ben Mayeaux, Laborde & Neuner, Lafayette, LA, and Jennifer M. Ellin, Caron, Constants & Wilson, Chicago, IL, Attorneys for Defendant/Appellee (Fireman's Fund Insurance Company).
Thomas P. Anzelmo, Catherine M. Williams, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, LA, Attorneys for Defendant/Appellee (East Jefferson General Hospital).
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and CLARENCE E. McMANUS.
GOTHARD, Judge.
This appeal is brought by plaintiffs, Daniel and Sandra Boutte, individually and on behalf of their children, Sandi Boutte, and Daniel Boutte, Jr., and Daniel Boutte's adopted son, Ernest Mamolo, III. The judgment from which plaintiffs appeal is a grant of four summary judgment motions filed by various hospital defendants. For reasons that follow, we affirm.
This matter began with a petition filed by plaintiffs naming Jefferson Parish Hospital Service District No. 1 d/b/a West Jefferson General Hospital (West Jefferson), Charity Hospital in New Orleans,[1] (Charity), Jefferson Parish Hospital Service District No. 2 d/b/a East Jefferson General Hospital (East Jefferson), Hotel Dieu Hospital (Hotel Dieu), and Daughters of Charity of St. Vincent de Paul, Inc. d/b/a Daughters of Charity of St. Vincent De Paul, St. Louis, U.S.A. (Daughters of Charity) as defendants. In the petition, plaintiffs allege that Daniel Boutte, Sr. was hospitalized at West Jefferson and Charity in November, 1968 for treatment of a fractured skull. According to the petition, Mr. Boutte was also hospitalized at East Jefferson and Hotel Dieu in 1981 and 1982 for treatment of leukemia. On all occasions of hospitalization, Mr. Boutte received transfusions of blood. On September 27, 1995 he was diagnosed with hepatitis C virus. Mr. Boutte asserts the cause of his contraction of the deadly virus was the infusion of contaminated blood at all of the hospitals. Mr. Boutte also asserts that several defendants, including the Daughters of Charity, are liable for failing to properly screen the blood supplied.
Defendant hospitals, Hotel Dieu, Charity, East Jefferson and West Jefferson, filed motions for summary judgment. Defendant insurance company, Fireman's Fund Insurance Company (Fireman's Fund),[2] filed a motion for summary judgment in support of the motion filed by Hotel Dieu. Defendants argued that plaintiffs cannot produce any evidence to establish the fundamental allegations of their petition. Plaintiffs opposed the motions, arguing that the hospitals were strictly liable and/or negligent by contributing in unknown proportions to cause an indivisible injury to Mr. Boutte, that the hospitals were alternatively liable, or that the doctrine of res ipsa loquitur applies. The trial court conducted a hearing on the matter and subsequently rendered a judgment, supported by extensive reasons, which granted the motions. It is from that ruling that plaintiffs appeal.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that *898 mover is entitled to judgment as a matter of law." La. C.C.P. art. 966. The Louisiana Supreme Court thoroughly analyzed the application of summary judgments in Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730, writ granted on other grounds, 96-1837 (La.9/27/96), 680 So.2d 1163, re'h. denied, 96-1837 (La.11/8/96), 683 So.2d 258. It is clear from that analysis that this Court must review the motion de novo. We must consider whether the summary judgment is appropriate under the circumstances of the case. There must be a "genuine" or "triable" issue on which reasonable persons could disagree. See also; Communication & Info. v. Expressions, 95-1070 (La.App. 5 Cir. 5/15/96), 675 So.2d 1164. A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Faul v. Bank of Sunset & Trust Co., 93-1080 (La.App. 3 Cir. 4/6/94), 635 So.2d 573, writ denied, 94-1627 (La.9/30/94), 642 So.2d 879. La. C.C.P. art. 966(C)(2) provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
In an action against the hospital, the general rules of negligence apply. A plaintiff must show a standard of care, a breach of that standard, an injury and a causal relationship between the injury and the breach of that duty. Smith v. State through Dept. of Health and Human Resources, 523 So.2d 815, 819 (La.1988); Alello v. Smith, 94-103 (La.App. 5 Cir. 7/26/94), 641 So.2d 664, 671, writ denied, 94-2231 (La.11/18/94), 646 So.2d 382.
A hospital is bound to exercise the requisite amount of care toward a patient that the particular patient's condition may require. It is the hospital's duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control. A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.
Hunt v. Bogalusa Comm. Med. Ctr. 303 So.2d 745, 747 (La.1974); Alello v. Smith, supra, 641 So.2d at 671.
In making its ruling, the trial court considered Mr. Boutte's deposition in which he stated that in 1968, at the age of sixteen, he suffered a fractured skull when a garage door he was helping to hang fell on him. He was taken to West Jefferson Hospital where he was given emergency blood transfusions and transferred to Charity Hospital in New Orleans. He was not certain if he received any additional transfusions at Charity.
Mr. Boutte further testified that he was admitted to East Jefferson Hospital in July, 1981, at which time he was diagnosed with leukemia. He received blood transfusions at that time. After a few days he was again transferred to Charity Hospital where he stayed off and on for the next two years. He stated that he did not specifically recall receiving blood transfusions at Charity during his treatment. Because of a fire at Charity, he was transferred to Hotel Dieu in 1982. He had *899 jaundice and hepatitis during his chemotherapy treatment in 1983 which was resolved when the chemotherapy was completed. Mr. Boutte stated that he was never told that he had chronic hepatitis which was unrelated to his chemotherapy. In September, 1995, he sought medical treatment for stomach pains and black stool. He was admitted to West Jefferson and diagnosed with hepatitis C and Cirrhosis of the liver. He further testified that he has a tattoo on each arm which he got in New Orleans in 1973 or 1974. He described the tattoos as a large eagle on the right biceps, and a large heart-shaped one with the name "Daniel" on the other biceps.
In support of the motions for summary judgment, the hospitals presented the affidavit of Dr. Sumner Gerald Sandler, an expert in the specialty of transfusion medicine who is currently affiliated with Georgetown University Medical Center. Dr. Sandler is the Associate Editor of Transfusion, Journal of the American Association of Blood Banks, Section Editor on Transfusion Medicine for Current Opinion in Hematology, Medical Editor for Immunohematology and serves on the Editorial Board of Haematologia, International Quarterly of Hematology.
Dr. Sandler stated that the hepatitis C virus was not actually named as such until 1989. The first laboratory tests for the virus were developed at that time. In his affidavit Dr. Sandler further explained that it is scientifically impossible to determine that the hepatitis C virus was contracted through blood transfusions given at the four hospitals because there is no meaningful information concerning the characteristics of the blood that was transfused. In 1968, 1981 and 1982 there were no tests available to screen the blood at the time and there is no sample of the blood transfused in any of the cases to test now. Dr. Sandler also stated that, "while a blood transfusion is widely regarded as an important `risk factor' associated with a recent diagnosis of hepatitis C, the mere presence of one or more risk factors does not permit any legitimate conclusions regarding causation." Further, Dr. Sandler stated that tattoos are a "well-recognized" risk factor associated with the contraction of hepatitis C virus, and is an equally plausible possible causation.
In opposition to the defendant hospitals' motions for summary judgment, the plaintiffs offered the affidavit of Dr. Richard Kamm, an expert in pathology and a noted author. His affidavit states that "the standard of care requires that all patients be given the safest blood possible. This is consistent with medical ethics, which requires health care providers `first do no harm'". Dr. Kamm also opines that it was a "negligent deviation from that standard, inappropriate and unethical for hospitals not to perform liver function/liver enzyme" tests on the blood supply. He further states that he reviewed the hospital records and found the "probable source" of Mr. Boutte's hepatitis C virus to be "one or more blood transfusions" he received at the defendant hospitals.
In further opposition to the summary judgment motions, plaintiffs offered a letter from Dr. Rian Tanenbaum, Mr. Boutte's treating physician, who stated that Mr. Boutte has hepatitis C which was "probably contracted" ten to twelve years ago while receiving transfusions during his treatment for acute lymphocytic leukemia.
We note that Dr. Kamm's affidavit does not dispute the testimony of Dr. Sandler that the hepatitis C virus was not named until 1989. He merely states that a liver function/liver enzyme test (SGPT/ALT) was available and would have reduced the risk of contraction of the hepatitis C virus. Further, Dr. Kamm gives the medical standard for keeping a patient *900 safe during a blood transfusion. It makes no mention of the standard of care for blood screening in this community in 1968 or 1981 or 1982. Finally, the affidavit does not address the issue of the risk factor presented by the tattoos. Thus, we do not agree with plaintiffs' contention that the trial court made a determination of credibility in making its ruling.
Plaintiffs do not name a specific blood transfusion or hospital which caused the hepatitis C virus. He merely states that all hospitals are liable. Plaintiffs use the theory that the hospitals are strictly liable for transfusing contaminated blood. However, there is no evidence to support the plaintiffs allegation that any of the blood was contaminated. We further note that there is no indication that Mr. Boutte ever received transfused blood while at Charity.
We believe under the circumstances of this case the trial judge was correct in the ruling that the plaintiffs cannot prove causation, an essential element of their cause of action. Therefore, we find the judgment granting summary judgments to be correct.
AFFIRMED.
NOTES
[1] Charity Hospital is now known as Medical Center of Louisiana at New Orleans.
[2] The record in this appeal is designated, and does not show when Fireman's Fund was added as a defendant.