677 So.2d 145 (1996)
FORD MOTOR CREDIT CO., Plaintiff-Appellant,
v.
Maria MELANCON, Defendant-Appellee.
No. 95-1221.
Court of Appeal of Louisiana, Third Circuit.
June 19, 1996.
*146 Edmond Wade Shows, Robert M. Adams, Jr., Baton Rouge, for Ford Motor Credit Company.
Toxie L. Bush, Jr., Abbeville, for Maria Melancon.
Before COOKS, DECUIR and GREMILLION, JJ.
*147 GREMILLION, Judge.
Plaintiff, Ford Motor Credit Company (FMCC) appeals the granting of a summary judgment in favor of the defendant, Maria Melancon, dismissing its Petition for Deficiency Judgment. Finding merit in FMCC's claim, we reverse.

FACTS
On August 30, 1991, Melancon obtained financing from FMCC and purchased a Ford Festiva automobile from Acadiana Ford in Kaplan, Louisiana, for $14,564.32. On June 19, 1992, the automobile was severely damaged and taken to Acadiana Ford for repairs. Because Melancon could not pay for the repairs, Acadiana Ford would not release the repaired car to her. Faced with the repair bill and monthly car notes, Melancon decided she could no longer afford the Festiva and executed a voluntary repossession agreement on December 16, 1992. This agreement states that FMCC "may obtain a judgment to collect any remaining amount due under the obligation after subtracting the agreed upon value." The agreed upon value was $3,000. FMCC then sold the Festiva at an auction for the price of $1,750. Following the sale, FMCC sued on a retail installment contract with voluntary surrender credit for $8,721.73, the amount owed on the contract less the agreed upon value. In response to this suit, Melancon filed a Peremptory Exception of No Right of Action, later amending the exception to include a Motion for Summary Judgment in the alternative. The exception and motion were based on the fact that the voluntary repossession agreement executed by Melancon did not contain the precatory language required by La.R.S. 13:4108.2. On March 27, 1995, the court denied Melancon's peremptory exception of no right of action, but granted her motion for summary judgment.
On appeal, FMCC raises the following issues:
1. Whether the retail installment contract executed by the defendant conferring a security interest in the vehicle to the vendor constitutes a secured transaction under La.R.S. 10:9-102 et seq.
2. Whether La.R.S. 13:4108.2(D) dealing with voluntary surrender agreements applies to consumer transactions that are secured transactions under La.R.S. 10:9-102 et seq.
3. Whether the failure of a secured creditor under La.R.S. 10:9-102 et seq. to comply with the requirements of La. R.S. 13:4108.2(D) dealing with voluntary surrender agreements precludes that secured creditor from maintaining an action for and/or obtaining a deficiency judgment.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo applying the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Facts are material if they determine the outcome of the legal dispute. South Louisiana Bank v. Williams, 591 So.2d 375 (La.App. 3 Cir.1991), writ denied, 596 So.2d 211 (La. 1992). The determination of the materiality of a particular fact must be made in the light of the applicable substantive law. Sun Belt Constructors v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5 Cir. 1988).

STATUTORY INTERPRETATION
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.Civ.Code art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La.Civ.Code art. 12. Laws on the same subject matter must be interpreted in reference *148 to each other. La.Civ.Code art. 13. When a statute is ambiguous or susceptible of two reasonable interpretations, statutory interpretation is necessary. State v. Randall, 219 La. 578, 53 So.2d 689 (La.1951). The paramount considerations for statutory interpretation is ascertainment of the legislative intent and the reasons which prompted the legislature to enact the law. Touchard v. Williams, 617 So.2d 885 (La.1993). Judicial construction must aim to attribute reasonable meaning to an entire statutory framework and context. Johnston v. Morehouse Parish Police Jury, 424 So.2d 1053 (La.App. 2 Cir. 1982), writ denied, 427 So.2d 1208 (La.1983).

ANALYSIS
Melancon claims that FMCC is precluded from obtaining a deficiency judgment against her because the voluntary surrender agreement she executed did not contain the precatory language required by the Deficiency Judgment Act, specifically La.R.S. 13:4108.2(D), which reads:
Every agreement for a voluntary surrender of title to property in connection with a consumer transaction as defined above shall contain a statement which notifies the debtor in laymen's terms:
(1)(a) That he has a right to obtain an appraisal, and
(b) That the value of the property assigned has to be three-quarters of the appraised value, and
(2)(a) That by agreeing to the surrender of the property without judicial appraisal and sale, the debtor is waiving any rights he might have under the law to further judicial proceedings governing the judicial sale of his property,
(b) That he is waiving his right to a judicial appraisal and sale, and
(c) That the creditor may obtain a judgment to collect any remaining amount due under the obligation after subtracting the agreed upon value of the property.
The terms of the voluntary repossession agreement executed by Melancon are as follows:
I am unable or unwilling to pay the installments scheduled on the account with respect to the above described vehicle. I, therefore, voluntarily release possession of the vehicle to you for your disposition, and I do hereby convey and transfer all rights, title and interest in and to the above described vehicle, together with my right and claim to any proceeds of insurance, rebates of unearned insurance premiums or any other sums of money that may be due me as a result of the cancellation of this debt, to you for disposition.
You may obtain a judgment to collect any remaining amount due under the obligation after subtracting the agreed upon value of the property from the outstanding balance due on my account.
FMCC asserts that the language required by La.R.S. 13:4108.2(D) is not required in this instance because the underlying transaction was a secured transaction subject to Chapter 9 of the Louisiana Commercial Laws.
The precatory language required by La.R.S. 13:4108.2(D) is applicable only to "a consumer transaction as defined above...." Consumer transaction is defined as "any transaction entered into for personal, family, or household (noncommercial) purposes and particularly includes transactions that are secured by residential immovable property, but excluding secured transactions for consumer purposes that are subject to Chapter 9 of the Louisiana Commercial Laws." La.R.S. 13:4108.2(B)(1). Additionally, La.R.S. 13:4108.3 provides that "[t]he rights or absence thereof of a secured creditor to pursue and collect a deficiency from a debtor, guarantor, or surety in connection with a secured transaction subject to Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq) shall be exclusively subject to the provisions of Chapter 9."
La.R.S. 10:9-102 provides the following:
(1) Except as otherwise provided in R.S. 10:9-104 on excluded transactions, this chapter applies
(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property *149 or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts;
* * * * * *
(4) As used in this Chapter the following terms have the following meaning when they refer to property that is located in this state and is subject to its law:
* * * * * *
(d) "Personal property" means movable property.
An automobile would fall under the category of personal property as well as "goods," which is defined in La.R.S. 10:9-105(1)(h) as things which are movable at the time the security interest attaches. Further, an automobile would be classified as a "consumer good" if it is used or bought for use primarily for personal, family, or household purposes.
It is quite clear that the legislature intended Chapter 9 of the Louisiana Commercial Laws to supersede the provisions of the Deficiency Judgment Act where a secured consumer transaction is concerned. The Deficiency Judgment Act and related articles of the Louisiana Code of Civil Procedure were amended by Acts 1989, No. 137, which provides the stated legislative intent as follows:
It is the intent of the Legislature in enacting this Act to amend preexisting Louisiana security device laws to accompany and accommodate implementation of Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.) as previously enacted under Act 528 of 1988. It is further the intent of the legislature that these preexisting code articles amended and reenacted under this Act, not be expressly or impliedly repealed by Chapter 9 of the Louisiana Commercial Laws, but that such laws remain in effect and be applied to preexisting secured transactions and, at times when so provided, be applied to secured transactions subject to Chapter 9 of the Louisiana Commercial Laws.
The amendment to the Deficiency Judgment Act clearly displays this legislative intent by specifically exempting secured transactions that are subject to Chapter 9 of the Louisiana Commercial Laws from its coverage. Prior to the 1989 amendment, La.R.S. 13:4108.2(B)(1) read as follows:
`Consumer transaction' means any transaction entered into for noncommercial purposes and particularly includes transactions that are secured by residential immovable property.
After amendment by Acts 1989, No. 137, § 8, eff. Sept. 1, 1989, La.R.S. 13:4108.2(B)(1) now reads:
"Consumer Transaction" means any transaction entered into for personal, family, or household (noncommercial) purposes and particularly includes transactions that are secured by residential immovable property, but excluding secured transactions for consumer purposes that are subject to Chapter 9 of the Louisiana Commercial Laws.

(Emphasis added.)
The changes to the applicable articles of the Code of Civil Procedure likewise reflect the Legislature's intent to exempt Chapter 9 transactions from the Deficiency Judgment Act. La.Code Civ.P. art. 2771, which describes the scenario when deficiency judgments may be obtained, previously provided:
The creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723.
After amendment by Acts 1989, No. 137, § 18, eff. Sept. 1, 1989, Article 2771 now reads:

Unless otherwise provided by law, the creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723.
(Emphasis added.)
La.Code Civ.P. art. 2723, concerning the appraisal of property, previously read:
Prior to the sale, the property seized must be appraised in accordance with law, *150 unless appraisal has been waived in the act evidencing mortgage or privilege and plaintiff has prayed that the property be sold without appraisal, and the order directing the issuance of the writ of seizure and sale has directed that the property be sold as prayed for.
After amendment by Acts 1989, No. 137, § 18, eff. Sept. 1, 1989, Article 2723 now reads:
Prior to the sale, the property seized must be appraised in accordance with law, unless appraisal has been waived in the act evidencing the mortgage, the security agreement, or the document creating the privilege and plaintiff has prayed that the property be sold without appraisal, and the order directing the issuance of the writ of seizure and sale has directed that the property be sold as prayed for. There is no requirement that the seized property subject to a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.), be appraised prior to the judicial sale thereof.

(Emphasis added.)
A close reading of the Deficiency Judgment Act and the stated legislative intent clearly indicates that the legislature intended to exempt from the Deficiency Judgment Act all secured consumer transactions except for preexisting secured transactions and, "at times when so provided, ... secured transactions subject to Chapter 9 of the Louisiana Commercial Laws." Despite this clear mandate, Melancon argues that if a consumer transaction is not subject to the Deficiency Judgment Act, then there is no law that addresses the content of a voluntary surrender agreement and creditors will be encouraged to resort to predatory and deceptive practices. However, a review of Chapter 9 of the Louisiana Commercial Laws reveals otherwise.
First, when the secured party accepts the voluntarily surrender of the collateral, he is presumed to accept in full satisfaction of the underlying obligation unless he notifies the debtor, in writing or otherwise, of his intention to reserve in full his right to a deficiency judgment. La.R.S. 10:9-505(3). After taking possession of the collateral, the secured party can dispose of the property either by public or private sale, with or without prior appraisal, at any time and place and on any terms. La.R.S. 10:9-504(3). However, "every aspect of such sale including the method, manner, time, place and terms must be conducted in good faith and in a commercially reasonable manner." Id. "Good faith" is defined by La.R.S. 10:1-201(19) as "honesty in fact in the conduct or transaction concerned...."[1] While the term "commercially reasonable manner" is not defined in the Louisiana Commercial Laws, we are provided with guidance by Professor William D. Hawkland, a member of the Permanent Editorial Board of the UCC:
The term "commercial reasonableness," by which all aspects of the disposition must be measured, is not defined in the UCC. This omission was the result of design. The draftsman felt that it would be unwise to try to place finite limits on the overriding standard of fair play that was to circumscribe all dispositions by the secured party under Chapter 9. Commercial reasonableness, therefore, is a general standard, something akin to other supereminent provisions such as "reasonable man," "reasonable time" and "good faith" that are used throughout the Anglo-American legal system and have served it well. Within this broad outline, jurisprudence, positive law found in UCC § 9-507 and official UCC Comments offer some guidance to give more concrete meaning to the concept of commercial reasonableness.
The case law suggests that the obligation of the secured party to act in a commercially reasonable manner generally means that he must use his best efforts to see that the highest possible price is received for the collateral. As suggested by an official comment, the provision of UCC § 1-203 imposing a general obligation of *151 good faith also is applicable in determining commercial reasonableness.
Although the UCC does not define commercial reasonableness, it does provide several rules that are helpful in determining whether or not this standard has been met. These rules are found in UCC § 9-507(2).
The first rule in UCC § 9-507(2) provides that the fact that a better price could have been obtained by a sale at a different time or by use of a different method is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. Moreover, if the secured party sells the collateral in the usual manner in any recognized market or otherwise sells it in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold it in a commercially reasonable manner. Finally, if the disposition has been approved in any judicial proceeding or by any bona fide creditor's committee or representative of creditors, the disposition is conclusively deemed to be commercially reasonable.
Official Comment 6 to UCC § 9-504 also gives guidance as to the meaning of commercial reasonableness in a situation that occurs with frequency, namely where the timeliness of the disposition is challenged. Initially, is should be noted that the UCC does not provide how long the secured party may hold the collateral before being obliged to dispose of it. By leaving this matter open, the intention of the draftsmen was to limit the secured party in this regard only by the standards of commercial reasonableness. The UCC's comment speaks to that issue, stating that its silence on the matter of timeliness of disposition is in line with its policy to encourage disposition by private sale through regular commercial channels. It suggests, for example, that the secured party might be acting in a commercially reasonable manner if he delayed a disposition where the market for the collateral had collapsed, or if he prudently decides to sell a large inventory of parcels over a period of time rather than all at once in bulk. On the other hand, the comment implies that a secured party would not be acting in a commercially reasonable manner if he held the collateral for a long period of time without disposing of it when no reasons exist for not making a prompt sale, thus running up large storage charges against the debtor. The comment also suggest that the secured party in holding the goods for disposition should be mindful of the general obligation of good faith under UCC § 1-203.
W. HAWKLAND, HAWKLAND'S HANDBOOK ON CHAPTER 9 LOUISIANA COMMERCIAL LAW (1990), at Chapter 5-Pages 16 & 17.
In her brief, Melancon raises the concern that if FMCC's position is correct, then La. R.S. 13:4108.2(D) is effectively repealed because there is no guidance as to which consumer transactions are subject to Chapter 9 and which are not. This concern is unfounded. La.R.S. 13:4108.2(B)(1) specifically includes consumer transactions that are secured by residential immovable property as transactions subject to La.R.S. 13:4108.2(D). Additionally, the stated legislative intent and the transitional rules of Chapter 9 point to instances where the Deficiency Judgment Act would apply and not Chapter 9. First, security rights in existence before the adoption of Chapter 9 are still "governed in all respects by pre-Chapter 9 law until the existing security right is extinguished and the rights of the parties or all other persons affected by, dependent upon, or arising from such existing security right are finally determined and fixed." La.R.S. 10:9-602(A). Additionally, "at times when so provided," the Deficiency Judgment Act is to apply to consumer transactions that are subject to Chapter 9.
We conclude that consumer transactions occurring after the enactment of Chapter 9 of the Louisiana Commercial Laws are governed by that chapter rather than the Louisiana Deficiency Judgment Act. Therefore, the retail installment contract executed by Melancon which conferred a security interest to FMCC, constitutes a secured transaction under La.R.S. 10:9-102 et seq. Under La.R.S. 10:9-105(3), a secured party may pursue his deficiency judgment rights by sending notice or otherwise notifying the debtor of his intention that he is accepting *152 possession of the goods with the full reservation of those rights within twenty days of taking actual possession of the goods. Since the transaction which conveyed the security interest to FMCC is governed by Chapter 9 of the Louisiana Commercial Laws, the terms and conditions of the voluntary surrender agreement are governed by Chapter 9, rather than the Louisiana Deficiency Judgment Act. Thus, the failure of FMCC to comply with the requirements of La.R.S. 13:4108.2(D) does not preclude FMCC from maintaining its action for a deficiency judgment.

CONCLUSION
For the foregoing reasons, the ruling of the trial court granting Melancon's Motion for Summary Judgment is reversed and the matter is remanded for further proceedings. Costs of the appeal are taxed against the defendant, Maria Melancon. All other costs are to be assessed following the trial on the merits.
REVERSED AND REMANDED.
COOKS, J., concurs and assigns reasons.
COOKS, Judge, concurs in result only.
On remand, Mrs. Melancon is not barred from attacking the "commercial reasonableness" of the auction sale. Further, she is not prevented from asserting plaintiff nevertheless may not pursue a deficiency claim against her pursuant to the terms of the installment contract that provided in part: "[T]he Creditor shall not proceed against Buyer personally if Buyer voluntarily surrenders, and the Creditor accept Vehicle purchased primarily for person, family, or house purposes."
NOTES
[1] See J. Pierre and M.R. Franks, The Consequence of Default to the Debtor Under Part 5, Chapter 9 of the Louisiana Commercial Laws: A Primer on Debtor's Rights, 18 S.U.L.Rev. 21 (1991), for an in depth analysis of the "good faith" requirement in the Louisiana Commercial Laws.