693 So.2d 883 (1997)
John COX, Plaintiff-Appellant,
v.
Gerald Glenn FUGLSANG, et al., Defendants-Appellees.
No. 96-1354.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
Rehearing Denied June 10, 1997.
*885 Terry Bennett Loup, New Orleans, for John Cox.
Charles J. Foret, Lafayette, for Gerald Glen Fuglsang, et al.
William Benton Gibbens, III, Stephanie D. Skinner, New Orleans, for Hargett Mooring & Marine, Inc.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
THIBODEAUX, Judge.
John Cox filed suit against Hargett Mooring and Marine, Inc., the owner of a ship, The Sea Level 21, on which Cox was a deckhand, for damages under the Jones Act as a result of personal injuries suffered in a vehicular accident. Hargett filed a motion for summary judgment. The trial court granted Hargett's summary judgment motion finding that Second Captain Gerald Fuglsang, the driver of the vehicle, was not acting within the course and scope of his employment at the time of the accident. It is from this judgment Mr. Cox appeals, asserting that there are facts constituting essential elements to the Jones Act claim which remain in dispute.
We reverse for the following reasons.

I.

ISSUES
The issues presented for review are whether the trial court erred in: (1) finding that the common law principle of respondeat superior applies to a Jones Act claim; (2) granting a motion for summary judgment because Mr. Fuglsang's liability cannot be imputed to Hargett; and (3) granting a motion for summary judgment because Hargett did not breach his duty to provide a safe place to work.

II.

FACTS
On October 26, 1991, John Cox, a seaman, was injured as a result of a vehicular accident when a truck driven by Second Captain Gerald Fuglsang overturned into a ditch. At the time of the accident, Mr. Cox was a deckhand employed by Hargett Mooring & Marine, Inc. and assigned to the M/V Sea Level 21. Second Captain Fuglsang was also employed by Hargett at the time of the accident. The M/V Sea Level 21 had been docked in Amelia, Louisiana for the two weeks prior to the accident and was to leave Amelia the day after the accident occurred.
Captain Melvin Verrett gave Second Captain Fuglsang permission to pick up a fellow crew member, Mike Hoyt, at the bus station. Second Captain Fuglsang left the vessel at approximately 5:30 p.m., intending to visit a friend before going to the bus station. Since his friend was not at home, Second Captain Fuglsang visited two bars and consumed two or three beers and three to four vodka and orange juice drinks. After picking up Mr. Hoyt, the two men went to a third bar.
Captain Verrett left the vessel at approximately 7:00 p.m. to visit his family and returned to the vessel around 10:30 p.m., *886 causing Second Captain Fuglsang to be more or less in charge of the ship during his absence. Mr. Cox went to sleep at approximately 10:30 p.m. only to be awakened sometime later. After learning that Mr. Hoyt was aboard the vessel, Mr. Cox went in search of Mr. Hoyt because he owed Mr. Hoyt some money.
After Mr. Cox approached Second Captain Fuglsang and Mr. Hoyt, Second Captain Fuglsang suggested they all get into his truck and go to a destination which is in dispute. The accident occurred within one half mile of the ship. Second Captain Fuglsang pled guilty to a DWI charge as a result of the accident. Hargett also fired him as a consequence of his conduct.
Hargett has a corporate policy which states that captains should not consume alcohol on or off the vessel. Second Captain Fuglsang had violated this policy before by reporting to the ship with alcohol on his breath. Captain Verrett was aware of Second Captain Fuglsang's previous violations of this policy, but never recorded his actions in his personnel file.

III.

LAW & DISCUSSION
Hargett argues that the common law theory of respondeat superior applies to Jones Act cases. Mr. Cox argues that the Jones Act is a departure from the common law and common law theories, such as respondeat superior, do not apply in cases involving the Jones Act. We agree.
The Jones Act reads, in pertinent part, as follows:
Any seaman who shall suffer personal injury in the course of his employment may ... maintain an action for damages at law ... and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.
46 U.S.C.A.App. § 688(a) (West 1996). This legislation provides seamen with the rights given to railway workers under the Federal Employer's Liability Act (FELA), 45 U.S.C.A. § 51 (West 1966); Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir.1997). "FELA's liberal purpose must be kept in mind when confronting arguments that would restrict an employer's liability under the [Jones] Act." Baker v. Baltimore & Ohio R.R. Co., 502 F.2d 638, 641 (6th Cir.1974).
FELA is a response to the special needs of railway workers who may be exposed to inherent risks at work on a daily basis and cannot adequately provide for their own safety. Dufour v. Union Pac. R.R. Co.-MO Pac. R.R. Co., 610 So.2d 843 (La.App. 1 Cir.1992). Given this purpose under FELA, courts need not depend on common law principles of liability, such as respondeat superior. Sinkler v. Missouri Pac. R.R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958). In fact, FELA is in abrogation of the common law as it views the inescapable expense of human injury in railroading must be borne by someone and "FELA seeks to adjust that expense equitably between the worker and the carrier." Sinkler, 356 U.S. at 329, 78 S.Ct. at 762 citing Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).
The purpose of the FELA was to promote:
"the welfare of both employer and employee, by adjusting the losses and injuries inseparable from industry and commerce to the strength of those who in the nature of the case ought to share the burden." S.Rep. No. 460, 60th Cong., 1st Sess. 3.
Sinkler, 356 U.S. at 330, 78 S.Ct. at 762. While continuing its discussion on the purposes of the FELA, the Supreme Court in Sinkler then stated:
Hence a railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker, not because the employer himself is to blame, but because justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety *887 while doing his part will not be endangered.
Id. This liberal and broad purpose provides the basis of the determination that respondeat superior does not apply to FELA cases. The FELA is a clear departure from the common law. Its purpose, in the interest of justice, is to protect those who work in inherently dangerous environments. This is also true for seamen under the Jones Act.
Principles of statutory construction also suggest that Second Captain Fuglsang need not be in the course of employment at the time of the injury. When a law is clear and unambiguous and its application does not lead to absurd consequences, then the law should be applied as written. La.Civ.Code art. 9. Words of law must be given their generally prevailing meaning. La.Civ.Code art. 11. Judicial construction should attribute reasonable meaning to the entire statutory framework and context. Ford Motor Credit Co. v. Melancon, 95-1221 (La.App. 3 Cir. 6/19/96); 677 So.2d 145. The humane policies underlying the enactment of FELA dictate that FELA and the Jones Act should be liberally construed in favor of the injured worker. The Jones Act states that a seaman who suffers personal injury "in the course of his employment" may maintain an action for damages. 46 U.S.C.A.App. § 688(a) (West 1996). Following the rules of statutory interpretation, the only person whose employment status this court should be concerned with is that of Mr. Cox, the seaman who suffered personal injury during the course of his employment. The employment status of all others who may be involved in this action is irrelevant.
The test for liability under the Jones Act is whether a seaman was injured by employer negligence during the course of his employment. Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 (La. App. 3 Cir.1980). The meaning of the term, "course of employment," under the Jones Act is the same as the term, "service of the ship," which is generally used in maintenance and cure cases because of the nature and scope of a seaman's employment and activities related to the furtherance of the vessel. Braen v. Pfeifer Oil Transp. Co., Inc., 361 U.S. 129, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959). In Gray v. Texaco, Inc., 610 So.2d 1090, 1094 (La.App. 3 Cir.1992), writs denied, 616 So.2d 686, 687 (La.1993), this court, quoting Wilkerson v. Teledyne Movible Offshore, Inc., 496 F.Supp. 1279, 1282-83 (E.D.Tex.1980), provided the definition of a seaman as one who:
"`(1) [has] a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips'" (Citations [sic] omitted).
Mr. Cox's seaman status is not an issue in this case.
Courts use two factors to determine whether a seaman is in the course of employment when injured:
(1) the degree of control the employer-vessel owner had over the seaman at the time of injury; and (2) whether the seaman, at the time of injury, was on personal business or on a mission for the benefit of his employer or attending to the business of his employer.
Lee v. Mississippi River Grain Elevator, Inc., Barge Div., 591 So.2d 1371, 1373 (La. App. 4 Cir.1991). Mr. Cox thought that Second Captain Fuglsang possessed a great deal of control over him and his actions in furtherance of the vessel since he thought Second Captain Fuglsang was in charge of the ship when he ordered Mr. Cox to accompany him. It is reasonably disputed whether the individuals were on their way to a store, as suggested by Cox, or to a bar, as suggested by Fuglsang. At any rate, this is a matter for resolution by the trier of fact.
Appellate courts perform a de novo review upon a motion for summary judgment, exercising the same criteria used in the trial court's determination of whether summary judgment is appropriate. Dauzat v. Hartford Ins. Co. of the Midwest, 95-50 (La.App. 3 Cir. 5/3/95); 657 So.2d 188. The recent amendments to Article 966 of the *888 Louisiana Code of Civil Procedure were meant to "secure the just, speedy, and inexpensive determination of every action." La. Code Civ.P. art. 966(A)(2). In achieving these goals, the amended statute provides that once the mover shows that the motion should be granted, then the burden shifts to the non-moving party who must present evidence which manifests remaining issues of material fact. Hayes v. Autin, 96-287 (La. App. 3 Cir. 12/26/96); 685 So.2d 691.
If the non-moving party fails to present evidence which comprises an essential element of the claim, the summary judgment motion will be granted as a matter of law. La.Code Civ.P. art. 966(C). There is no "genuine issue of material fact" when the non-moving party is unable to present evidence essential to the claim because those facts, which were not put forth, are material to the claim. Id. The moving party is "entitled to judgment as a matter of law" because when the burden of proof shifted to the non-moving party, a sufficient showing of an essential element of the claim was not made. Hayes, 96-287; 685 So.2d 691.
In order for this court to grant Hargett's motion for summary judgment, we must find that Mr. Cox failed to produce evidence which constitutes an essential element to a Jones Act claim. Hargett asserts Mr. Cox failed to establish that Second Captain Fuglsang's acts of negligence were during the course of his employment which are essential facts in a Jones Act claim. As we have previously determined, the Jones Act is a departure from the common law. Principles such as respondeat superior do not apply to Jones Act claims. Whether Second Captain Fuglsang was in the course of his employment is not an essential element towards the establishment of a Jones Act claim on behalf of Mr. Cox.[1]
Hargett argues that it is entitled to judgment as a matter of law because it has not condoned continuously unsafe working conditions on its vessel. It further asserts that the prior occasions upon which Second Captain Fuglsang reported to the vessel with alcohol on his breath occurred when he left the ship on personal business with permission to leave. A Jones Act employer has a duty to exercise reasonable care to maintain a reasonably safe working environment. Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982).
Mr. Cox has presented evidence which is essential to a claim asserting Hargett's liability. Deposition testimony provided by Captain Verrett states that he, as Captain of the vessel, had personal knowledge of two or three prior occasions in which Second Captain Fuglsang left the vessel for a short period of time and then reported to the ship with alcohol on his breath. Hargett has a policy against employees working on its vessels while under the influence of alcohol. Captain Verrett did not file a report in Second Captain Fuglsang's personnel records nor did he reprimand the second captain about reporting to the ship with alcohol on his breath. These facts demonstrate a sufficient showing that an unsafe place to work may have been created by Hargett's lack of enforcement of its policies on board its vessels, thus precluding summary judgment.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the district court granting Hargett's motion for summary judgment is reversed. This case is remanded to the district court for proceedings consistent with the views expressed herein.
*889 All costs of appeal are assessed against Hargett Mooring and Marine, Inc.
REVERSED AND REMANDED.
NOTES
[1] Summary judgment would not be proper in this case even if respondeat superior did apply. The facts concerning the destination of Mr. Cox's ride in the vehicle with Second Captain Fuglsang are in dispute. Mr. Cox testified in his deposition that Second Captain Fuglsang told him to get into the truck so that they could go to the store. Second Captain Fuglsang testified that he told Mr. Cox that he was going to "Mike's," a bar. Without knowing the purpose of the trip, one would not be able to determine whether the crew members were acting in the course of their employment using common law principles. The trial court, in its fact-finding capacity, needs the opportunity to weigh the credibility of the witnesses and determine the nature of these disputed facts which are essential to this claim.