701 So.2d 1014 (1997)
POOL COMPANY
v.
UNIVERSAL MACHINE COMPANY, INC.
No. 97-CA-321.
Court of Appeal of Louisiana, Fifth Circuit.
October 15, 1997.
*1015 Edward S. Johnson, Salvatore A. Faso, II, New Orleans, for plaintiff/appellant.
Conrad Meyer, IV, New Orleans, for defendant/appellee.
Before GAUDIN, GRISBAUM and WICKER, JJ.
WICKER, Judge.
This appeal arises from a petition filed on behalf of Pool Company (Pool), plaintiff/appellant, against Universal Machinery Co., Inc. (UMC), defendant/appellee, seeking the return of $11,856.17, for a parts restocking fee, allegedly paid under protest by Pool to UMC. Pool also seeks to recover damages for breach of contract, violation of the Unfair Trade Practices Act,[1] misrepresentation, wrongful conversion of property, unjust enrichment, and interference with Pool's contractual relationship with another party. UMC filed a motion for summary judgment asserting the defense of accord and satisfaction. The trial judge granted the motion for summary judgment and dismissed Pool's suit. Pool now appeals. We reverse and remand.
Pool specifies the following error on appeal:
The trial court erroneously granted summary judgment in favor of UMC as genuine issues of material fact were in dispute as to whether a compromise and/or settlement was reached between Pool and UMC.
Additionally, Pool argues there are issues of material fact as to whether the parties mutually consented to a compromise.
Pool delivered five Caterpillar engine and generator sets to UMC on July 27, 1995. The parties disagreed as to the type of work which was to be performed by UMC. Pool argued it requested UMC to evaluate and provide an estimate of the cost of repairing or refurbishing these parts. Pool asserted it never authorized UMC to actually commence the repair of the parts. In contrast, UMC argued that Pool authorized work on the engines and that it (UMC) ordered parts in compliance with Pool's request to meet a deadline. Both parties introduced affidavits in support of the position taken.
UMC submitted an invoice totaling $24,163.05 to Pool in August 1995. After a disagreement arose as to the amount of the invoice, UMC reduced the amount by $10,000. Pool tendered a check to UMC reflecting the reduced amount of $14,163.05. Upon receipt of the check, UMC released the engines to Pool.
Pool argued that it paid the check under protest because UMC would not release the engines without payment. According to Pool, it was under a time constraint, pursuant to a contractual obligation, to return the engines to the owners. Pool disputed the amount charged for a restocking fee on the basis it had never authorized the repair of the engines.
UMC contends the doctrine of accord and satisfaction applies to bar Pool's suit since Pool tendered its check with the following notation:
Payee, by endorsing or cashing this check, acknowledges full satisfaction of drawer's obligation on the statement attached.
However, Pool introduced a copy of the check and the stub. The stub contains a section which states: "Detach statement before depositing." That statement provides:
8/3/95 Secure release of 5-399 Engines $14,163.05 ...
While an inference could be made that the payment was to be in full satisfaction of the amount owed for repair of the engines, it could also be inferred from the check stub/statement that the amount paid was *1016 merely in full satisfaction for the release of the engines.
In McClelland v. Security Indus. Ins. Co., 426 So.2d 665, 669-71 (La.App. 1st Cir.1982), writ denied, 430 So.2d 94 (La.1983) the court explained:
The doctrine of accord and satisfaction is a jurisprudentially created method by which an obligation can be extinguished. Necessary for the application of this doctrine are a disputed claim, a tender of payment for less than the amount of the claim by the debtor, and an acceptance of the tender by the creditor. Essential to a valid accord and satisfaction is that the creditor understands that the payment is tendered in full settlement of the dispute.
* * * * * *
The doctrine of accord and satisfaction is a common law concept judicially incorporated in Louisiana jurisprudence and is grounded on basic contractual principles. It is hornbook contract law that the courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. In such cases, the presumption asserted by the appellant comes into play and is conclusive. However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties [footnotes omitted; citations omitted; emphasis added].
The restrictive endorsement on the check, combined with the attached statement, renders the terms of the tender subject to more than one interpretation. Both parties introduced contradictory affidavits as to the intent of the tendered check and the nature of the agreement.
In Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750-52 the court explained:
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. "Stated conversely, [summary judgment] should be denied if there is (1) a genuine issue of fact and (2) it is material to the case." [quoting Brown v. B & G Crane Service, Inc., 172 So.2d 708, 710 (La.App. 4th Cir.1965)].
A "genuine issue" is a "triable issue." More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." [quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1983)]. In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact." [quoting Brown, supra at 710].
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." [quoting South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La. App.3d[sic] Cir.1991), writs denied, 596 So.2d 211 (La.1992)]. Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion *1017 and in favor of a trial on the merits [citations omitted; emphasis added].
When subjective facts are at issue, summary judgment is rarely appropriate. Smith, supra; Communication and Information Resources, Inc. v. Expressions Acquisition Corp., 95-1070 (La.App. 5th Cir. 5/15/96) 675 So.2d 1164. In the instant case summary judgment is not appropriate since there is a genuine issue of material fact as to the intent of the parties, necessitating the weighing of contradictory testimony and making credibility determinations.[2]
Accordingly, for the reasons stated, the judgment is reversed and the case is remanded to the trial court for further proceedings at appellee's cost.
REVERSED AND REMANDED.
NOTES
[1] La.R.S.51:1409, et. seq.
[2] We recognize that La.Code Civ. P. art. 966 was recently amended. Acts 1997, No. 483, effective July 1, 1997. Section 4 of the act further provided the legislative intent was to "legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3rd Cir. 12/26/96) 685 So.2d 691." The Hayes court adopted the more liberal standard for summary judgment used by the federal courts. While we make no determination as to whether such amendment is retroactive, we note that under either standard the result would be the same since both parties have countervailing affidavits regarding intent and there is a genuine issue of material fact precluding summary judgment.