749 So.2d 692 (1999)
Roryann SMITH, et al., Plaintiffs-Appellees,
v.
Jerry C. LYNN, et al., Defendants-Appellants.
No. 32,093-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
Opinion Granting Rehearing in part and Denying Rehearing in part September 16, 1999.
Concurring Opinion on Rehearing September 16, 1999.
McKeithen & Johnson, by Ginger W. Johnson, Shreveport, Counsel for Appellant, Jerry C. Lynn.
Zelda W. Tucker, Shreveport, Counsel for Appellants, Jerry Lynn and Allstate Ins. Co.
Abrams & Lafargue, by Reginald W. Abrams, Wilbert D. Pryor, Shreveport, Counsel for Appellant, Allstate Ins. Co. as the Uninsured Motorist Carrier of Roy A. Morris.
Joseph A. Gregorio, Bossier City, Counsel for Appellee, Roryann Smith.
*693 Before NORRIS, C.J., and WILLIAMS and STEWART, JJ.
STEWART, J.
The defendant in this tort action, Allstate Insurance Company (Allstate), appeals a partial summary judgment in favor of the plaintiff, Roryann Smith, et al, as to the liability of defendant Jerry Lynn. We reverse.

FACTS
At about 1:30 a.m. on April 12, 1998, Jerry Lynn ("Lynn") was driving his van eastbound on U.S. Highway 80 approaching Hamilton Road in Bossier City, Louisiana. At the same time, Jennifer Morris ("Morris") was driving herself and two companions, Callie Smith and Sheryl Bayles ("Bayles"), northbound on Hamilton Road. The vehicles collided in the intersection. The collision killed Morris and injured her two passengers. The Smith, Bayles and Morris' families filed separate tort actions against Lynn and his insurer, Allstate; these actions have not been consolidated. Because Callie Smith was a minor, her mother, Roryann Smith, brought this lawsuit on the child's behalf; plaintiff also sued Allstate in its capacity as the uninsured / underinsured motorist insurance carrier of Morris.
The parties deposed two eyewitnesses to the crash, Cindy Burson and David Hicks. Burson and Hicks were traveling together in a vehicle headed westbound on Highway 80 and had stopped for a red light at the Hamilton Road intersection. Hicks, responding to questions from plaintiff's counsel, described the accident this way:
A: I was doing about 10 or 15 miles an hour. Right past where I noticed the red light.... I was coming to a complete stop.... I saw the van. It looked like it was speeding. It wasn't doing 35 because I wasn't doing 35 and it shows you're not doing 35 and then the little truck is coming this way and the lights turn automatically. So they're goingthey didn't really have to slow down.... So the truck is going this way through the intersection. The van is in the far right lane going east on Highway 80 and he's coming down and he's not slowing at all. He didn't even look like he even saw them so he's coming down this way and then it was about it was about right here (indicating) ... he hits them right there in the middle of the door.
Again in response to a question from plaintiff's counsel, Cindy Burson said:
Q: And when you noticed that your signal was red, where was the van in relation to the intersection?
A: He was probably ... five or ten feet before Mr. Jim's Chicken... .... [R]ight when the light turned red he was probably like five feet in front of [the Mr. Jim's Chicken property line].... In other words, ... the way I saw it he could have had plenty of time to stop ... unless he wasn't looking at... the light.
Later, Burson said that the light in favor of Morris' truck was green for at least "a couple of seconds" or "probably like five seconds" before the crash and that "any normal person would go through the light... at that time." Callie Smith executed an affidavit stating that the light in favor of Morris' truck was green.
The defendants answered the lawsuit and specifically denied that Jerry Lynn was negligent in his operation of his vehicle. Neither defendant alleged the comparative negligence of Morris. The defendants answered the plaintiff's Request for Admissions with denials of facts suggesting Lynn's negligence. The plaintiff sought to depose Jerry Lynn, but Lynn filed a motion to cancel the deposition and to quash the deposition subpoena. Lynn sought to avoid the deposition for the stated reasons that the deposition could be used against him in his pending negligent homicide case and that he suffers from a mental disability that inhibits his capacity *694 to understand the nature of the proceedings. Lynn indicated that the criminal proceedings against him had been stayed pending the outcome of a sanity hearing in that matter. The trial court granted Lynn's motion, and Lynn was not deposed.
Subsequently, the plaintiff filed a Motion for Summary Judgment on the question of Lynn's liability. In support of that motion, the plaintiff attached the depositions of Hicks and Burson, the accident report and photos from the Bossier City Police Department, and the affidavit of Callie Smith. Two of the photos depict the speedometer of Lynn's wrecked van and show that the needle was frozen at about 62 m.p.h. The defendants opposed the motion, arguing that there were genuine issues of material fact regarding Lynn's negligence and the comparative fault of Martin. In support of the first allegation, the defendants included an affidavit from Lynn stating, in part, that "he was not traveling 62 m.p.h.," "his driving ability was not impaired nor was he distracted or inattentive" and that "he did not run a red traffic light." In support of the second allegation, defendants cited a portion of Burson's deposition where she indicated that the Morris vehicle might have been speeding into and through the intersection. In Burson's words:
[I]t seemed like they were going like they really weren't going like just 40. You know, maybe 5 over. They weren't going really fast but they were going fast up to the light.... [I]f they were back ... far enough going fast enough they probably saw the light was red but knew that it would be turning green....
The trial court granted the plaintiff's Motion for Summary Judgment, giving oral reasons for judgment. The court stated, in part:
I read through the depositions and II don't think it's appropriate for me to consider a large amount of things that were ... offered as evidence, such as the pictures of the speedometer, the incident report and other things like that. So, I'm going purely by the depositions of the two parties and all the affidavits that have been filed. So, I have the depositionsand I think they're more dependable than affidavits because, frankly, you can ... prepare an affidavit and put it in terms most favorable to someone's position and then that person is not subject to cross-examination and you can't really develop their version of what occurred very much. So, I would give greater weight to these depositions and also the fact that the depositions evidently are two people that are totally independent, had no friendship or connection with any of the parties involved and were literally just eye witnesses. And based on their testimony, the defendant ran a red light, struck the other vehicle. But to corroborate that you have the plaintiff's affidavit, which should be given some weight.... [T]heir testimony goes into great depth and I just think it's clear and obvious the person ran a red light and ran into them. And the only thing you have is this affidavit that now he's filed. And it would seem very unfair for me to give that any weight because thatthe record does contain proof that the plaintiff attempted to take his deposition and he asserted the Fifthhis Fifth Amendment right, which that's fine. He has that right. But then he can't turn around and then submit an affidavit of favorable things and then not subject himself to cross examination which, in effect, he's done. So, I don't think it's appropriate for me to give any weight to his affidavit.
The trial court certified its partial judgment as a final appealable judgment under La. C.C.P. art.1915. Allstate now appeals the referenced certified final judgment in its capacity as liability carrier of Jerry C. Lynn and as underinsured motorist carrier of Roy A. Morris.

DISCUSSION
Appellate courts conduct a de novo review of the documentation supporting *695 and opposing summary judgment under the same criteria which governs the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any issue of material fact and whether the movant is entitled to judgment as a matter of law. Rance v. Harrison Company, Inc., 31,503 (La.App.2d Cir.1/20/99), 737 So.2d 806.
La. C.C.P. art. 966 provides, in part:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant....
The plaintiff, movant herein, bears the burden of proving the defendant's liability at trial.
La. C.C.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The appellant argues that the trial court erred by granting the motion for summary judgment because the judgment improperly considered the credibility of the parties and failed to allocate fault among the parties.
According to Citizens Bank & Trust Co. v. Mitchell, 31,435 (La.App.2d Cir.1/20/99), 727 So.2d 661,
Even under the more liberalized summary judgment law, ... summary judgment may not be granted when the supporting and opposing documents reveal conflicting versions of the facts which may only be resolved by weighing contradictory testimony and assessing witness credibility. See and compare Miramon v. Woods, 25,850 (La.App.2d Cir.6/22/94), 639 So.2d 353; Cox v. Fuglsang, 96-1354 (La.App. 3d Cir.4/30/97), 693 So.2d 883, writ denied; Pool Co. v. Universal Machine Co., 97-321 (La.App. 5th Cir.10/15/97), 701 So.2d 1014.
The defendant Lynn responded to the motion with an affidavit indicating, inter alia, that he did not enter the intersection on a red light. However, he had previously refused, partly on Fifth Amendment grounds, to give a deposition, and the trial court considered this refusal in deciding not to give weight to the defendant's affidavit.
Consideration of the weight of the evidence is improper on a motion for summary judgment. It is not the function of the trial court on a motion for summary judgment to determine or even inquire *696 into the merits of the issues raised. The weighing of conflicting evidence has no place in summary judgment procedure. Commercial Nat. Bank in Shreveport v. Dance, 27,337 (La.App. 2 Cir. 9/27/95) 661 So.2d 551, 555, rehearing denied. This court has recognized that a negative inference may be drawn against a party to a civil case who asserts his Fifth Amendment privileges. Boyd v. Boyd, 26,292 (La.App.2d Cir.12/7/94), 647 So.2d 414, 416 (Fn.2). See also Dimitri v. O'Keefe, 96-1358 (La.6/21/96), 675 So.2d 733. However, that inference is recognized in the context of the weight to be given to the party's evidence. Black's Law Dictionary, Sixth Edition (West 1990) defines inferences in part as:
deductions or conclusions which with reason and common sense lead the jury to draw from facts which have been established by the evidence in the case.
As a "deduction" or a "conclusion," this particular inference has no place in the consideration of a motion for summary judgment when the opponent of the motion has made an affirmative response by affidavit. When a response is made, courts should not consider whether the facts presented in the response are true but instead should consider whether the facts presented are disputed and material. The negative inference, if any, created by a party's refusal to be deposed strikes at the truth of the disputed factsa question of the witness' credibilityand is not cognizable under La. C.C.P. arts. 966 and 967. To the extent that Miles v. Louisiana Landscape Specialty, Inc., 97-118 (La.App. 5th. Cir.6/30/97), 697 So.2d 348 holds otherwise, we decline to follow that decision.
In his affidavit, Lynn stated under oath that he did not run a red traffic light. We construe Lynn's response to be an assertion that he was lawfully in the intersection at all times, or, in other words, a denial that he was in the intersection at any time when the traffic signal facing him was red. See La. R.S. 32:232. These assertions raise a genuine issue of material fact, so the trial court's ruling on the motion for summary judgment must be reversed.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Because we reverse the decision of the trial court on these grounds, it is unnecessary to address the appellant's contention that the trial court should have allocated fault before granting the motion. Costs of this appeal are assessed to appellee, Roryann Smith.
REVERSED AND REMANDED.
Before NORRIS, C.J., and BROWN, WILLIAMS, STEWART and GASKINS, JJ.

ON REHEARING
PER CURIAM.
Granting in part a rehearing to correct and include the name of other defendants and otherwise denying application for rehearing.
[Editor's Note: Corrections incorporated for purposes of publication.]
BROWN, J., concurs with written reasons.
BROWN, J., concurring.
Jerry Lynn avoided his obligation to be deposed, claiming that he had a right against self-incrimination and that he suffered from a mental disability that made him incompetent to testify. The trial court granted Lynn's motion to not be deposed.
The trial court, however, did not consider Lynn's affidavit filed in opposition to plaintiffs' summary judgment motion. I agree with the trial court. Because Lynn stated that he was incompetent to testify, he should not be able to defeat a summary judgment motion with an affidavit. This is the same as a contradictory statement. In *697 this case, however, plaintiffs did not seek a rehearing.