STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2022 CA 0626

VELOCITY INVESTMENTS, LLC

VERSUS

ADAM PASQUA

JUDGMENT RENDERED: **JAN 1 0 2023**

* * * * * * *

Appealed from Ascension Parish Court
Parish of Ascension • State of Louisiana
Docket Number 2021-008

The Honorable Erin W. Lanoux, Presiding Judge

* * * * * * *

| | |
|---|---|
| Garth Jonathan Ridge<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLANT<br>DEFENDANT—Adam Pasqua |
| | |
| Mary Grace Pollet<br>Adam R. Deniger<br>Gregory M. Eaton<br>Michael L. Lancaster<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLEE<br>PLAINTIFF—Velocity Investments,<br>LLC |

* * * * * * *

**BEFORE: WELCH, PENZATO, AND LANIER, JJ.**

Welch concur without reasons

Penzato, J. Concurs without reasons

**WELCH, J.**

In this matter, the parish court granted summary judgment in favor of a debt collector for the balance and interest owed on the note of a repossessed motor vehicle that was disposed of at sheriff's sale. The debtor appealed. For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

Adam Pasqua purchased a used 2011 Infiniti G37 on November 28, 2014, for the total cash price of $44,744.24 from North American Automotive Group in Gonzales, Louisiana. Mr. Pasqua made an initial down payment of $2,000.00 and financed the remaining $42,744.24 purchase price through a retail installment sale contract calling for seventy-two (72) monthly payments of $593.67 at 20.95% interest. The contract granted the creditor-seller a security interest in the vehicle.[1] The contract provided:

> **3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
>
> \*\*\*
>
> **c. You may have to pay attorney's fees and collection costs.** If we hire an attorney to collect what you owe... .
>
> **d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you after we give you any notice and wait the time the law requires. ... We may only take the vehicle if we do so peacefully and the law allows it. ...
>
> **e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
>
> **f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
>
> We will apply the money from the sale, less allowed expenses, to the amount you owe. ... If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay the amount when we

---

[1] Specifically, the contract provided: "**Security Interest.** You are giving a security interest in the vehicle being purchased."

ask, we may charge you interest on that amount until you pay at the Base Rate shown on the front of this contract.

North American Automotive Group assigned its rights in Mr. Pasqua's contract to Consumer Portfolio Services, Inc. ("CPS"). After Mr. Pasqua defaulted on the requisite monthly payments under the contract, CPS repossessed the vehicle in May 2017, and had it sold at sheriff's sale in July 2017.

In November 2018, CPS assigned and transferred all its rights, title, and interest in Mr. Pasqua's contract to Velocity Investments, LLC ("Velocity"). Velocity filed suit to recover the balance of the contract allegedly totaling $15,960.82, together with 5.75% interest from the date of judgment, and costs. Mr. Pasqua answered the petition, entering general denials and raising the issue of the commercial reasonableness of the sale of the repossessed vehicle.[2]

Thereafter, Velocity filed a motion for summary judgment arguing that there was no genuine issue of material fact that Mr. Pasqua owed the $15,960.82 balance under the contract. Mr. Pasqua opposed Velocity's motion, contending that the default notices allegedly sent to him, the repossession of the vehicle, and the sale of the vehicle did not comply with the Uniform Commercial Code ("UCC").

Following a hearing held on December 14, 2021, the parish court granted Velocity's motion for summary judgment. The parish court signed a judgment in accordance with its ruling on December 22, 2021, in favor of Velocity and against Mr. Pasqua in the amount of $15,960.82, together with 5.75% interest from the date of judgment,[3] plus all costs of the proceedings. Mr. Pasqua now appeals.[4]

---

[2] Mr. Pasqua admitted only his domicile; he denied every other allegation in the petition "for lack of sufficient information to justify a belief therein."

[3] Although prayed for by Velocity in its petition, the parish court erred in awarding judicial interest at the rate of 5.75% from the date of judgment. The judicial interest rate for 2021 was 3.5%. See La. R.S. 13:4202(B); see also Louisiana Bar Journal, "2021 Judicial Interest Rate is 3.5%," December 2020/January 2021, Vol. 68, No. 4, p. 282.

[4] Mr. Pasqua timely filed a motion for a devolutive appeal on January 5, 2022. The parish court signed an order of appeal on January 20, 2022, notice of which was transmitted by the Clerk of Court to the parties on January 26, 2022.

## SUMMARY JUDGMENT

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. **In re Succession of Beard**, 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-60. That is, after an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the mover—here, Velocity. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.[5] The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment will be granted. **Murphy v. Savannah**, 2018-0991 (La. 5/8/19), 282 So.3d 1034, 1038.

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. See **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (*per curiam*). A genuine issue

---

[5] As the plaintiff, Velocity bears the burden of proof at trial to establish a *prima facie* case of a debt owed to it by Mr. Pasqua. Once a *prima facie* case has been established by the plaintiff by a preponderance of the evidence, the burden shifts to the defendant, here, Mr. Pasqua. See **Dupre v. Joe's Riverside Seafood, Inc.**, 578 So.2d 158, 163 (La. App. 1st Cir. 1991).

4

is one as to which reasonable persons could disagree. However, if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Hines**, 876 So.2d at 765-66; **Marks v. Schultz**, 2020-0197 (La. App. 1ˢᵗ Cir. 12/10/20), 316 So.3d 534, 538. Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Jenkins v. Hernandez**, 2019-0874 (La. App. 1ˢᵗ Cir. 6/3/20), 305 So.3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315. In other words, a fact is "material" when its existence or nonexistence is essential to the plaintiff's cause of action under the applicable theory of recovery. **Smith v. Our Lady of the Lake Hosp., Inc.**, 93-2512 (La. 7/5/94), 639 So.2d 730, 751. Any doubt as to a dispute regarding an issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. **Id**. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Shoemake v. Scott**, 2019-1261 (La. App. 1ˢᵗ Cir. 8/3/20), 310 So.3d 191, 193-94.

## LAW AND DISCUSSION

In support of its motion for summary judgment, Velocity submitted[6] its original petition; Mr. Pasqua's answer; Mr. Pasqua's admissions; Mr. Pasqua's

---

[6] Louisiana Code of Civil Procedure article 966(A)(4) provides that "[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." Also attached to Velocity's motion were: request for admission of fact; note interrogatories; surrender interrogatories; request for genuineness of documents and request for production of documents; Mr. Pasqua's response to requests for genuineness and production of documents; and an October 7, 2020 letter from Velocity to Mr. Pasqua notifying him that Velocity had received his account for collection. The above-listed documents do not fall into any category of documents listed in La. C.C.P. art. 966(A)(4); however, those documents were not objected to. Thus, under La. C.C.P. art. 966(D)(2), this court "shall consider any documents to which no objection is made" to determine, *de novo*, if any evidentiary value should be given to the documents. See **Pottinger v. Price**, 2019-0183 (La. App. 1ˢᵗ Cir. 10/23/19), 289 So.3d 1047, 1053. Pursuant to La. C.C.P. arts. 1441, 1466-67, and 1457-59, we find that the request for admission of fact, the interrogatories, and requests for and response to production of documents have evidentiary value in conjunction with the corresponding responsive evidence, *i.e.*, Mr. Pasqua's admissions, answers to the interrogatories, and produced documents. However, the October 7, 2020 letter is an unsworn and unverified document because it was not attached to an affidavit or otherwise

5

answers to "note" interrogatories; Mr. Pasqua's answers to "surrender" interrogatories; and the affidavit of Alia Shaalan, a compliance associate of Velocity's legal network, along with several attachments, including the sale and assignment of certain accounts from CPS to Velocity; CPS's affidavit of sale of account to Velocity; the November 28, 2014 retail installment sale contract; North American Automotive Group's assignment of Mr. Pasqua's contract to CPS; Mr. Pasqua's credit statement application; Velocity's pre-possession notice; Velocity's notice of plan to sell vehicle; sheriff's sale bill of sale; and an account spreadsheet.

### Velocity's Affidavit

In his first, second, and fifth assignments of error, Mr. Pasqua argues that the parish court erred by granting summary judgment because the evidence submitted by Velocity in support of its motion was not properly authenticated, specifically the attachments to Ms. Shaalan's affidavit. Mr. Pasqua further argues that the evidence attached to Ms. Shaalan's affidavit was not admissible under the business records exception to the hearsay rule. Mr. Pasqua also contends that Ms. Shaalan's affidavit does not comply with La. R.S. 13:3733(D).

Louisiana Code of Civil Procedure article 967(A) provides, in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Personal knowledge encompasses only those facts that the affiant saw, heard, or perceived with his own senses. See **Berard v. L-3 Communications Vertex Aerospace,**

---

authenticated. A document that is not an affidavit or sworn to in any way, or is not certified or attached to an affidavit, has no evidentiary value on a motion for summary judgment. Therefore, in meeting the burden of proof, unsworn or unverified documents, such as the October 7, 2020 letter, annexed to motions for summary judgment are not self-proving and will not be considered; attaching such documents to a motion for summary judgment does not transform such documents into competent summary judgment evidence. See **Bunge N. Am., Inc. v. Bd. of Com. & Indus. & Louisiana Dep't of Econ. Dev.**, 2007-1746 (La. App. 1st Cir. 5/2/08), 991 So.2d 511, 527, writ denied, 2008-1594 (La. 11/21/08), 996 So.2d 1106.

LLC, 2009-1202 (La. App. 1st Cir. 2/12/10), 35 So.3d 334, 349, writ denied, 2010-0715 (La. 6/4/10), 38 So.3d 302. An affirmative showing of competency cannot be established without a predicate showing of personal knowledge. Otherwise, personal knowledge may be based on hearsay or other incompetent evidence. **Unifund CCR Partners v. Perkins**, 2012-1851 (La. App. 1st Cir. 9/25/13), 134 So.3d 626, 631-32.

With regard to business records, the following are not excluded by the hearsay rule of La. C.E. art. 803(6), even though the declarant is available as a witness:

> **Records of regularly conducted business activity.** A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule.

Louisiana jurisprudence has held that the wording of La. C.E. art. 803(6) does not preclude the introduction of incorporated business records originally generated by another business, if properly authenticated and determined to be trustworthy by the trial court. See **Burdette v. Drushell**, 2001-2494 (La. App. 1st Cir. 12/20/02), 837 So.2d 54, 62-63, writ denied, 2003-0682 (La. 5/16/03), 843 So.2d 1132. A party who seeks to submit written hearsay evidence pursuant to La. C.E. art. 803(6) must authenticate it by a qualified witness. The witness laying the foundation for admissibility of the business records does not have to be the preparer of the records. **Finch v. ATC/Vancom Management Services Ltd. Partnership**, 2009-483 (La. App. 5th Cir. 01/26/10), 33 So.3d 215, 220. A qualified witness only needs to be

7

familiar with the record-keeping system of the entity whose business records are sought to be introduced. **Id**. at 220.

Louisiana Revised Statutes 13:3733 provides, in pertinent part:

> A. Any business may cause any or all records kept by such business in regular course of its operation to be recorded, copied, or reproduced by any electronic imaging, photographic, photostatic or miniature photographic process which correctly, accurately, and permanently copies, reproduces or forms a medium for copying or reproducing the original record on a film or other durable material... .
>
> B. Any such electronically imaged, photographic, photostatic or miniature photographic copy or reproduction shall be deemed to be an original record for all purposes and shall be treated as an original record in all courts or administrative agencies for the purpose of its admissibility in evidence. ...

Section 3733(D) additionally provides that a copy or reproduction shall be deemed an original or authentic copy of the original record or document when certified with a certificate reading "substantially" as follows: "I, ___ do hereby certify that this document is a true and correct copy of the original thereof, consisting of ___ page(s), being a reproduction thereof from the records on file with the undersigned, in accordance with Louisiana Revised Statutes, Title 13, Section 3733."

Ms. Shaalan, by way of affidavit, states that she is employed as a compliance associate with Velocity's legal network, the servicer of "defendant's account" on behalf of Velocity. Ms. Shaalan states that she is "familiar and well acquainted" with Mr. Pasqua's account and "is duly qualified and authorized to make this affidavit based upon personal knowledge and business records of [Velocity] as well as the account information supplied to [Velocity]." Ms. Shaalan specifically states that Velocity is the holder of credit issued through CPS, which shows a total balance on the auto loan account of Adam Pasqua in the amount of $15,960.82, subject to a credit of $.00, as of October 15, 2020. She certified that all documents attached to her affidavit are correct originals or true and correct copies of the originals, being

8

reproductions from the records on file with Velocity in accordance with La. R.S. 13:3733.

Based on the applicable law, we conclude that Ms. Shaalan's affidavit meets the personal knowledge requirements of La. C.C.P. art. 967(A). The affidavit contains facts and information setting forth the basis of Ms. Shaalan's personal knowledge and competency to testify to the matters stated. The affidavit identifies her position of employment with Velocity and shows that she has personal knowledge regarding Velocity's business records. The affidavit discloses the records that were seen and reviewed by Ms. Shaalan with respect to Mr. Pasqua's account. The affidavit also indicates that the documents in question are attached to it. Ms. Shaalan's affidavit certified that the business records complied with La. R.S. 13:3733. Because neither Ms. Shaalan's affidavit nor the documents attached to it provide any indication of a lack of trustworthiness, we find that the documents as a whole sufficiently authenticate Velocity's claims.

As it concerns La. C.E. art. 803(6)'s business records hearsay exception, Ms. Shaalan's affidavit establishes that she is a qualified witness. Where business records are concerned, La. C.C.P. art. 967 is satisfied when the affiant is qualified to identify the business records as such. Where the affiant is familiar with the account and business records, it is not necessary for the affiant to show that she personally prepared the business records or that she had direct, independent, first-hand knowledge of their contents. **Durand v. Graham**, 2019-1312 (La. App. 1st Cir. 6/12/20), 306 So.3d 437, 442.

Finally, while Ms. Shaalan's affidavit does not contain the exact language provided for by La. R.S. 13:3733(D), we nonetheless find that the affidavit "substantially" certifies that the documents are true and original copies as required

by the statute. Accordingly, we find that these assignments of error are without merit.[7]

## Disposition of Collateral After Default

In his third and fourth assignments of error, Mr. Pasqua argues that Velocity failed to prove that the sale of his repossessed vehicle was "commercially reasonable." Mr. Pasqua specifically argues that he did not receive the proper notices required under Louisiana's commercial law.

In 1990, Louisiana adopted its own version of Article 9 of the UCC with the enactment of Louisiana UCC Chapter 9 ("LA UCC-9"), found at La. R.S. 10:9-101, *et seq*. The LA UCC-9 creates and regulates security interests, which is an "interest in personal property or fixtures, created by contract, which secures payment or performance of an obligation." La. R.S. 10:1-201(b)(35). Under LA UCC-9, a security interest in favor of a secured party attaches to collateral (*i.e.*, the movable subject to the security interest)[8] at the moment that the security interest is enforceable against the debtor. La. R.S. 10:9-203.

LA UCC-9 does allow self-help repossession in cases expressly provided by other law. See La. R.S. 10:9-609(a)(4). In 1992, our Legislature enacted the Additional Default Remedies Act (Louisiana's Self-Help Law), permitting certain categories of creditors limited self-help repossession rights under strictly regulated procedures. See La. R.S. 6:965-967. The remedies available under this law are *in addition to* all other remedies available to enforce nonpossessory security interests. See La. R.S. 6:965(B), 6:966(E). The statute can be used only to repossess "motor vehicles" and "motorcycles" as defined in La. R.S. 32:1252. See La. R.S.

---

[7] We pretermit discussion of Mr. Pasqua's final assignment of error (No. 6). In our *de novo* review of Velocity's motion for summary judgment, we only considered the documents admissible under La. C.C.P. art. 966(A)(4). Accordingly, the only affidavit (and attachments) that we considered was the one filed in conjunction with Velocity's motion for summary judgment.

[8] La. R.S. 10:9-102(a)(12) ("'Collateral' means the property subject to a security interest ... .").

10

6:965(C)(2). Louisiana's Self-Help Law permits the repossession of motor vehicles

upon default by the debtor without judicial process to enforce a security interest. The

process is outlined in La. R.S. 6:966, in pertinent part, as follows:

> A. (2) Prior to the use of the procedures set forth in this Chapter, a secured party **shall send notice** to all debtors in writing at the last known address of the debtors, of the right of the secured party to take possession of the collateral without further notice upon default as defined in R.S. 6:965(C). Such **notice shall include** the debtor's name, <u>last known address</u>, and <u>description</u> of the collateral and the following in at least twelve-point type:
>
> <u>"Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process."</u>
>
> (3) After obtaining possession of the collateral, the secured party **may dispose of it in any manner permitted by Chapter 9 of the Louisiana Commercial Law, R.S. 10:9-101 et seq.** or by resort to available judicial procedures, and may cause the collateral to be retitled. ...
>
> B. Unless otherwise agreed, a secured party has, on default, the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without a breach of the peace or may proceed by other remedies available by law.
>
> ***
>
> E. The secured party shall have and retain all of the possessory and enforcement rights provided under Chapter 9 of the Louisiana Commercial Laws, R.S. 10:9-101 et seq., **including the right to recover a deficiency or any other costs associated with the seizure proceeding** provided for in this Chapter. [Emphasis added.]

As set forth in La. R.S. 6:966(A)(3), the secured party may dispose of the

repossessed collateral in any manner permitted by LA UCC-9. The disposition of

collateral after default is governed by La. R.S. 10:9-610, in part, as follows:

> **(a) Disposition after default.** After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
>
> **(b) Commercially reasonable disposition.** Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or

private proceedings, by one or more contracts, as a unit or parcels, and at any time and place and on any terms. A disclaimer or modification of warranties in a secured party's disposition of collateral is commercially reasonable.[9]

A secured party that intends to dispose of collateral under La. R.S. 10:9-610 shall send a reasonable authenticated notification of disposition to the debtor. La. R.S. 10:9-611(b). To comply with the "reasonable authenticated notification" requirement of La. R.S. 10:9-611(b), the contents of a notification must include the following information—as set forth generally in La. R.S. 10:9-613(1)—

(A) describes the debtor and the secured party;
(B) describes the collateral that is the subject of the intended disposition;
(C) states the method of intended disposition;
(D) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and
(E) states the time and place of a public disposition or the time after which any other disposition is to be made.

—and as set forth more specifically for consumer goods in La. R.S. 10:9-614(1)—

(A) the information specified in R.S. 10:9-613(1);
(B) a description of any liability for a deficiency of the person to which the notification is sent;
(C) a telephone number from which the amount that must be paid to the secured party to redeem the collateral under R.S. 10:9-623 is available; and

---

9 While the term "commercially reasonable manner" is not defined, LA UCC-9 gives some guidance as to dispositions that satisfy the commercially reasonable requirement. **Neighbors Federal Credit Union v. Anderson**, 2015-1020 (La. App. 1st Cir. 6/3/16), 196 So.3d 727, 730. "Good faith" is defined in La. R.S. 10:1-201(20) as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Additionally, La. R.S. 10:9-627 provides that a disposition is made in a commercially reasonable manner if any of the following applies: the disposition is made in the usual manner on any recognized market; the disposition is made at the price current in any recognized market at the time of the disposition; or the disposition is made otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition. La. R.S. 10:9-627(b). The case law suggests that the obligation of the secured party to act in a commercially reasonable manner generally means that the secured party must use his best efforts to see that the highest possible price is received for the collateral. See **Ford Motor Credit Co. v. Melancon**, 95-1221 (La. App. 3rd Cir. 6/19/96), 677 So.2d 145, 150 (citing William D. Hawkland, *Hawkland's Handbook on Chapter 9 Louisiana Commercial Law* (1990), at Chapter 5, pp. 16-17). However, the fact that a secured party might have obtained a greater amount of proceeds by proceeding with a collection, enforcement, disposition, or acceptance at a different time or in a different method is not, of itself, sufficient to preclude the secured party from establishing that the enforcement action it chose was made in a commercially reasonable manner. La. R.S. 10:9-627(a).

12

(D) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

See also UCC Comment (2) to La. R.S. 10:9-613 and 10:9-614.

After disposing of collateral, the proceeds of the disposition are applied first to the expenses of disposition, second to the obligation secured by the security interest that is being enforced, and third, in the specified circumstances, to interests that are subordinate to that security interest. La. R.S. 10:9-615(a). After making the payments and applications required under La. R.S. 10:9-615(a), the obligor is liable for any deficiency. La. R.S. 10:9-615(d)(2).

Following a disposition in a consumer-goods transaction[10] in which the debtor is liable for a deficiency, the secured party must send to the debtor a written "explanation" since the amount of the deficiency is unknown until after the disposition of the collateral.[11] See La. R.S. 10:9-616(b)(1). As defined in La. R.S. 10:9-616(a):

(1) "Explanation" means a writing that:
(A) states the amount of the surplus or deficiency;
(B) provides an explanation in accordance with Subsection (c) of how the secured party calculated the surplus or deficiency;
(C) states, if applicable, that future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency; and
(D) provides a telephone number or mailing address from which additional information concerning the transaction is available.

---

[10] A motor vehicle is a "consumer good" as defined in LA UCC-9. See La. R.S. 10:9-109(1); La. R.S. 10:9-102(1)(a); La. R.S. 10:9-102(4)(d); and La. R.S. 10:9-105(1)(h). See also L. David Cromwell, "Consumer goods," Chapter 3. *Louisiana UCC Terminology and Types of Collateral*, III. *Types of UCC Collateral*, LOUISIANA PRACTICE SECURED TRANSACTIONS § 3:34 (2022-2023 ed.).

[11] See L. David Cromwell, "Disposition of collateral after default—Liability for deficiency and entitlement to surplus—Explanation of calculation in consumer-goods transactions," Chapter 10. *Default Remedies*, IV. *Non-Judicial Remedies under Louisiana UCC Chapter 9*, LOUISIANA PRACTICE SECURED TRANSACTIONS § 10:75 (2022-2023 ed.).

Louisiana Revised Statutes 10:9-616(c) states that to comply with La. R.S. 10:9-616(a)(1)(B), an "explanation" must provide the following information in the following order:

(1) the aggregate amount of obligations secured by the security interest under which the disposition was made, and, if the amount reflects a rebate of unearned interest or credit service charge, an indication of that fact, calculated as of a specified date:

(A) if the secured party takes or receives possession of the collateral after default, not more than thirty-five days before the secured party takes or receives possession; or

(B) if the secured party takes or receives possession of the collateral before default or does not take possession of the collateral, not more than thirty-five days before the disposition;

(2) the amount of proceeds of the disposition;

(3) the aggregate amount of the obligations after deducting the amount of proceeds;

(4) the amount, in the aggregate or by type, and types of expenses, including expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral, and attorney's fees secured by the collateral which are known to the secured party and relate to the current disposition;

(5) the amount, in the aggregate or by type, and types of credits, including rebates of interest or credit service charges, to which the obligor is known to be entitled and which are not reflected in the amount in Paragraph (1); and

(6) the amount of the surplus or deficiency.

Our *de novo* review of the evidence submitted by Velocity in support of its motion for summary judgment reveals no disputes as to the following facts: the signed and dated November 28, 2014 retail installment sale contract identifies Mr. Pasqua as the buyer and North American Automotive Group as the creditor-seller. The contract includes the date of the loan, the amount financed, the credit terms of the loan, and the security agreement. The evidence further identifies Mr. Pasqua as the debtor; North American Automotive Group as the original creditor, which then assigned its rights to CPS; and Velocity as the current holder of Mr. Pasqua's debt. The evidence shows that Velocity sent Mr. Pasqua a pre-repossession notice in

14

compliance with La. R.S. 6:966(A)(2) and a pre-disposition notice in compliance with La. R.S. 10:9-611(b), La. R.S. 10:9-613(1), and La. R.S. 10:9-614(1). The evidence further shows that the vehicle was sold at sheriff's sale for $8,900.00.

The evidence reveals, however, genuine issues of material fact as to the stated amount allegedly owed by Mr. Pasqua. The evidence further reveals genuine issues of material fact as to whether Velocity breached its duty to provide Mr. Pasqua a written explanation of the amount of the deficiency and the basis upon which the deficiency was calculated. Velocity presented no evidence showing it provided Mr. Pasqua with a written "explanation" of how Velocity calculated the alleged deficiency amount of $15,960.82, as mandated by La. R.S. 10:9-616. While Ms. Shaalan's affidavit indicates that "the total balance on the account" in the amount of $15,960.82 is due, there is no explanation of that amount, nor any indication of whether that is the deficiency owed by Mr. Pasqua following disposition of the vehicle. Based on our *de novo* review, we conclude that Velocity failed to satisfy its initial burden, meaning that the burden of proof never shifted to Mr. Pasqua.[12] Therefore, we find that the parish court erred in granting summary judgment in favor of Velocity.

### DECREE

We reverse the parish court's December 22, 2021 judgment, in favor of Velocity Investments, LLC and against Adam Pasqua in the amount of $15,960.82, together with 5.75% interest from the date of judgment,[13] plus all costs of the proceedings. All costs of this appeal are assessed to Velocity Investments, LLC.

**REVERSED.**

---

[12] Mr. Pasqua sufficiently pled Velocity's non-compliance with the provisions of LA UCC-9 "in connection with" Velocity's motion for summary judgment. See La. R.S. 10:9-626(a)(1). Therefore, Velocity had the burden of proving compliance with LA UCC-9 pursuant to La. R.S. 10:9-626.

[13] See FN 3, *supra.*